UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

v.                                        Case No. 8:05-cv-1226-SCB-TGW

MASTEC NORTH AMERICA, INC.,

        Defendant.

_____/

## <u>ORDER</u>

This cause comes before the Court on Defendant MasTec North America, Inc.'s ("MasTec") motion for summary judgment.  (Doc. No. 33.)  MasTec argues that summary judgment is appropriate because Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") retaliation claim fails on the merits and because the EEOC failed to satisfy its statutory obligation to conciliate in a good faith effort to avoid litigation.  The EEOC opposes the entry of summary judgment, arguing that there are genuine issues of material fact as to whether MasTec terminated Katie Schell in retaliation for her complaints of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 (b) ("ADEA").  (Doc. No. 34.)  Furthermore, the EEOC argues that it fully satisfied its obligation to conciliate in good faith.  For the reasons stated herein, MasTec's motion is denied.

**I.**    **Facts and Procedural History**

Schell worked for MasTec from 1984 until her termination on November 25, 2003.  (Doc. No. 34, Ex.1.)  During her employment, Schell worked in the company's Accounting Department as a General Ledger/Bookkeeper, and later as a General Ledger Supervisor,

preparing inventories, making entries to financial statements, and conducting research.  (Schell

dep., p.28, 33.)  Schell supervised Heather Wladyka.  (*Id.* at 36.)

In January 2001, Comptroller Caroline Santoni became Shell's immediate supervisor.

(*Id.* at 34-35.)   Santoni also supervised Accounts Payable Supervisors Anne Shearer and Susan

Tousignant.  (*Id.* at 131.)  Shearer was in her early 20's, and Tousignant was in her early 30's.

(*Id.* at 132.)  Santoni reported to Senior Vice President Charles Duff.  (Santoni dep., p.20.)

Sometime in 2003, Shearer and Tousignant began making derogatory comments about

Schell's age.  Human Resources Manager Eileen Swain heard Shearer and Tousignant make

derogatory age comments to Schell "no less than 20 or 30" times.  (Swain dep., p.43-44.)  She

heard these comments "once a day for months."  (*Id.* at 92.)  For example, Swain heard Shearer

tell Schell that the reason Schell could not understand a particular computer program was

because she was "too old" and that she "need[ed] to get in the 90's."  (*Id.*)  On another occasion,

Shearer told Schell that "she needed to retire" and that "it was a waste of her time [to teach her

the new computer system] because [Schell] was too old and needed to go."  (*Id.* at 117.)  Swain

also overheard Tousignant tell Schell that she was "too old," that "[she] had been here longer

than the building's been here," and that she was "old as dirt."  (*Id.* at 47.)  When Swain informed

Santoni about these comments, Santoni told her not to worry about it because "[i]t was a joke."

(*Id.* at 93, 94.)

Schell's assistant, Wladkya, also over heard Tousignant make derogatory age comments

about Schell's age.  For example, Tousignant said that Schell "wasn't good at [a computer

program] because of her age."  (Wladyka dep., p.30.)   She also stated that Schell was a

"dinosaur" or from the "dinosaur generation." (*Id.* at 97.)  Wladyka told Schell about these

comments.  (*Id.* at 30-31.)

On May 8, 2003, Schell was working late with Shearer and Tousignant when the two spoke to her in a threatening manner.  (Schell dep., p.142.)  The next morning, when Schell informed Santoni of their conduct, Santoni brought Shearer and Tousignant into her office.  (*Id.*)  The three of them began "violently yelling" at Schell.  (*Id.* at 143.)  Then, Santonti told Schell that Shearer and Tousignant could act any way they wanted to act.  (*Id.*)  On another occasion, Santoni cancelled a computer class that Schell had requested in order to better perform her job.  (*Id.* at 152.)

### Schell's Complaints of Age Discrimination

On May 14, 2003, Schell complained to Regional Director of Human Resources Debbie Lewis of an abusive and hostile work environment, discrimination, and disparate treatment.  (Doc. No. 34, Ex.7.)  On May 19, 2003, Lewis traveled to Tampa to investigate Schell's complaint.  (Schell dep., p.183.)  After conducting her investigation, Lewis submitted a report to Senior Vice President Duff, concluding that the allegations against Santoni, Shearer, and Tousignant were alleged to be more serious than they actually were.  (Doc. No. 34, Ex.9.)  However, Lewis was critical of Santoni's management style and recommended that she receive management training.  (*Id.*)  Lewis also recommended that Shearer and Tousignant receive coaching and guidance in professional behavior.  (*Id.*)

Lewis returned to Tampa in July 2003 to reevaluate the office environment.  She met with some of the employees individually and as a group, although she did not meet with Schell individually.  (Lewis dep., p.51-52; Schell dep., 191.)  During the group meeting, Lewis stated that, based on information she received from others, she concluded that conditions in the office

had improved.  (Schell dep., p.191.)  Although Schell did not express it to Lewis at that time, she did not believe that the environment had improved and continued to feel discriminated against because of her age.  (*Id.* at p.191-92, 200.)  Schell did not tell Lewis she felt this way because she felt that Lewis had betrayed her by divulging confidential information from her May 14th complaint.  (*Id.*)

In September 2003, Schell complained verbally to Senior Vice President Duff that Santoni was discriminating against her because of her age.  (*Id.* at 204-05, 208-09; Duff dep., p.41-42.)   Upon hearing Schell's complaint, Duff became agitated and asked "how in the world do you expect me to believe [you]."  (Schell dep., p.206.)  He then asked Schell how she intended to correct the problem, to which Schell responded that she would "do her best to work with [Santoni]."  (*Id.* at 206, 208.)  Duff then suggested that they "let three or four weeks pass and see how things go."  (*Id.* at 207.)  Schell agreed, and told him that she would "be more than glad to work on the situation."  (*Id.* at 208.)

On October 31, 2003, Schell submitted a written complaint to the company's Human Resources Department that she was being discriminated against on the basis of her age.  (Doc. No. 33, Ex.12.)  In particular, Schell alleged that Santoni had yelled at her, had been condescending to her, had a preference for younger workers, and had an agenda to replace older qualified workers with less experienced younger ones.  (*Id.*)  On November 5, 2003, Duff met with Schell and Santoni to determine whether the office environment had improved.  (Schell dep., p. 220; Duff dep., p.47.)  Schell again stated that the environment had not improved and that Santoni treated her differently because of her age.  (*Id.* at 221.)

On November 12, 2003, Schell sent another letter to the Human Resources Department

complaining of age discrimination and stating that the matters she raised in her October 31st
complaint had not been resolved.  (Doc. No. 33, Ex.13.)  She stated that, during their November
5th meeting, Duff threatened to fire her if things did not change.  (*Id.*)  Schell also stated that, at
that meeting, Duff told her that a former employee once sued MasTec, lost the case, and had to
pay MasTec as a result. (*Id.*)   Schell felt that Duff made these statements in retaliation for her
complaint of age discrimination and in attempt to threaten and intimidate her. (*Id.*)

On November 20, 2003, Vice President of Human Resources George Boue spoke with
Schell regarding her complaints.  (Boue dep., p.45.)  He concluded that there was no evidence of
age discrimination, and that it sounded more like a management and team dynamics problem.
(*Id.* at 45-46.)  He then asked Schell whether she would consider working at another office
location in Tampa, in another department.  (*Id.* at 48-49.)  Schell indicated that she would not
enjoy working at the other Tampa location and that she wanted to continue in her position.  (*Id.*)

**Schell's Termination**

Five days later, on November 25, 2003, Schell was called into a meeting with Duff and
the company's Risk Management Division Manager.  (Schell dep., p.254; Doc. No. 33, Ex.16.)
Duff informed Schell that there were three options: (1) to allow her to continue working under
Santoni's supervision; (2) to "think about creating" an administrative clerical position for Schell
in the safety risk management department located in MasTec's other Tampa office; or (3) to let
her go.  (Schell dep., p.265; Doc. No. 33, Ex.16.)  MasTec's other Tampa office was located in a
dusty area and was frequented by a yard dog.  (Duff dep., p. 57-58; Wladyka dep., p.88.)  Duff
was aware that Schell suffered severe allergies and that she was afraid of the dog.  (Duff dep.,
p.58.)  According to Schell, Duff did not actually offer to transfer her to a position in that office,

5

or inform her of the rate of pay for the administrative clerical position.  (Schell dep., p.268.)

Rather, he stated that "he could look into putting [her] [in the safety risk management

department], but he wasn't going to do that."  (Schell dep., p.269.)  Instead, Duff terminated

Schell's employment.  (Duff dep., 56-58.)  Schell was 59-years-old at the time of her

termination.  (Doc. No. 33, Ex.17.)

Human Resources Vice President Boue later testified that "it would not surprise [him]" if

Schell was terminated in retaliation for her complaints because the management at that time "had

a typical style of just acting independently without necessarily consulting" company

management."  (*Id.* at 59-60.)  He further testified that "[he] could see a person like Charlie Duff

just say 'You know what, enough of this, let's just fix this matter,' and terminate [Schell.]"  (*Id.*

at 60.)

### EEOC's Investigation of Schell's Charge of Discrimination

On February 2, 2004, Schell filed a charge of discrimination with the EEOC, alleging age

discrimination and retaliation.  (Doc. No. 33, Ex.17.)  After investigating Schell's Charge, on

December 30, 2004, the EEOC issued a Letter of Determination, finding reasonable cause to

believe that Schell had been retaliated against for complaining of age discrimination. (Doc. No.

35, Ex.8.)  Its Determination was based on the following: "Although there is no evidence that

Charging Party caused the problems in the Accounting Department and that other employees in

the department were causing the problems, no action was taken towards them.  Instead, after

Charging Party made her 2nd complaint she was discharged when she failed to agree to transfer

to a new position in the Risk Management Department."  (*Id.*)

After receiving the EEOC's Determination, MasTec's Assistant General Counsel Jose

Llerena informed the EEOC that MasTec wished to conciliate the matter.  (Doc. No. 33, Ex.19.)

Thereafter, on January 14th and 24th, Llerena sent EEOC Investigator Clyde LoChin two letters

requesting that the EEOC provide the factual basis for its Determination.  (*Id.* at Exs. 20,22.)

LoChin later submitted an affidavit stating that he had at least two conversations with Llerena

during which "[he] explained [that] the basis for the EEOC's Determination that Ms. Schell was

retaliated against was that she had no performance issues, she complained of age discrimination,

and then she was suddenly terminated."  (Doc. No. 38, Ex.10.)  LoChin again explained the

factual basis for the EEOC's Determination to another MasTec attorney, Lori Brown, during the

conciliation conference on January 26, 2006.  (*Id.*)

EEOC Tampa Area Office Director Manuel Zurita later testified that he believed that

MasTec's requests for the factual basis for the EEOC's Determination were made in bad faith.

(Zurita dep., p.81, 86.)  He explained that "the facts were black and white, and looking for

additional explanation of something that's black and white . . . was frivolous, was looking to

create some argument where there [was] none."  (*Id.* at 88.)  He testified that he "didn't recall"

whether he or LoChin informed MasTec of his conclusion that the requests were in bad faith.

(*Id.* at 84.)  He further testified that, to his knowledge, the EEOC did not respond to MasTec's

letters, but that he believed an appropriate response would have been, "'Go fly a kite with your

technicalities.'" (*Id.* at 59, 86-87.)  Finally, he stated that he "[could] not testify" about what

LoChin did or did not say to the MasTec attorneys during the conciliation conference because he

did not recall being present.  (*Id.* at 91-92.)

After conciliation efforts failed, the EEOC initiated this lawsuit, alleging that MasTec

terminated Schell in retaliation for her complaints of age discrimination, in violation of the

ADEA.  On July 25, 2006, MasTec filed the instant Motion for Summary Judgment, arguing that the EEOC's retaliation claim fails on its merits and that the EEOC's failure to satisfy its statutory obligation to conciliate in good faith warrants dismissal of the case.  (Doc. No. 33.)

## II.     Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325, 106 S. Ct. at 2554.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  *See id.*  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  *Id.* at 324, 106 S. Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more

8

than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

## III.   Discussion

### A.   Retaliation under the ADEA

The EEOC alleges that Mastec retaliated against Schell because of her complaints of age discrimination in violation of the ADEA. The ADEA makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA]." 29 U.S.C. § 623(d). To evaluate a retaliation claim supported by circumstantial evidence, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis. *See Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). Under this framework, the plaintiff must raise an inference of discrimination by establishing a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824. The burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826. To avoid summary judgment, the plaintiff must produce sufficient evidence to show "that the employer intentionally discriminated against [her] because of [her] [protected characteristic]."

9

*Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, a plaintiff must establish that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Here, MasTec argues that Schell did not engage in protected expression. And, even assuming that the EEOC could establish a prima facie case, MasTec argues that the EEOC cannot show that MasTec's reason for terminating Schell was pretext for intentional age discrimination.

### 1.    The EEOC's Prima Facie Case

"To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Id.* (quoting *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997). "A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 956. In other words, "it is not enough for a plaintiff to allege that [her] belief was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*

MasTec does not contest that Schell subjectively believed that it was engaged in unlawful age discrimination. Rather, MasTec argues that she did not have an objectively reasonable belief that unlawful discrimination was occurring. For support, MasTec cites

Schell's testimony in which she agreed that it was possible that her age played no role at all in how she was treated at work.  MasTec also notes that Schell's October 2003 written complaint about Santoni's treatment toward her did not reference age discrimination.  Finally, as evidence Schell's belief was not objectively reasonable, MasTec points to the fact that the EEOC itself found that the evidence was insufficient to conclude that Schell had suffered age discrimination.

The facts of this case reveal that Schell had an objectively reasonable belief that she was opposing an unlawful age discrimination.  Shearer and Tousignant regularly directed age-related derogatory comments toward Schell, such as that she was "old as dirt," that she "needed to retire," and that she was a "dinosaur."  Santoni was aware of these age-related comments, but failed to take any action to prevent them.  Santoni also cancelled a computer class that Schell was scheduled to attend in order to improve her job performance.  In light of these repeated comments, and Santoni's treatment toward Schell, a rational jury could conclude that Schell had an objectively reasonable belief that she was opposing discrimination, despite her testimony that it was "possible" that her age did not play a role in how she was treated.   Furthermore, MasTec's allegation that Schell's October 2003 letter did not reference age discrimination is a misstatement of the record.  In that letter, Schell specifically alleged that Santoni had an agenda to replace older qualified workers with less experienced younger ones.   Finally, the Court rejects MasTec's assertion that the EEOC's failure to find age discrimination undermines the EEOC's argument that Schell had an objective good faith belief that she suffered discrimination.  The law is clear that "[a] plaintiff . . . need not prove the underlying discriminatory conduct that [s]he opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment; such a requirement would not only chill the legitimate assertion of

employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Id.* (quotation and citation omitted.)  Accordingly, the Court finds that the EEOC established that Schell engaged in a protected expression.

The Court further concludes–and MasTec does not dispute–that the EEOC established the remaining elements of its prima facie case.  Schell suffered an adverse employment action when she was terminated from MasTec.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006 ) (ruling that termination qualifies as an adverse employment action).  Moreover, there is a causal connection between Schell's complaints of age discrimination and her termination.  Duff was aware of Schell's complaints, and he decided to terminate her employment within two weeks of her last complaint.  *See id.* (ruling that close temporal proximity between protected conduct and an adverse employment action is sufficient to create an issue of fact, except when there is unrebutted evidence that the decision maker did not have knowledge of the protected conduct).

### 2.     MasTec's Legitimate Nondiscriminatory Reason

Because the EEOC has raised an inference of discrimination by establishing a prima facie case, the burden shifts to MasTec to "articulate some legitimate nondiscriminatory reason" for the alleged retaliation. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824.  As its legitimate nondiscriminatory reason for terminating Schell's employment, MasTec proffers that Schell refused to accept the company's offer to transfer to the safety risk management department.  According to MasTec, this new position was a reasonable solution to the problems Schell was having in the Accounting Department because she would be working under a

12

different supervisor, at the same rate of pay, and at the same worksite.   MasTec's burden is merely one of production, not persuasion.  *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003) (per curiam).  This proffered reason eliminates the presumption of discrimination and shifts the burden back to the EEOC "to come forward with sufficient evidence to permit a reasonable factfinder to find that those reasons were prextual."  *Chapman v. AI Transport*, 229 F.3d 1012, 1028 (11th Cir. 2000) (en banc).

### 3.   The EEOC's Evidence of Pretext

The EEOC argues that the circumstances surrounding Schell's termination would lead a reasonable jury to conclude that MasTec's stated reason for terminating her employment was pretextual.  The EEOC notes that Duff did not actually offer to transfer Schell to a new position, but rather, merely mentioned it, and then immediately terminated her employment.  Furthermore, the position Duff mentioned was a non-supervisory clerical position in another department, in another building that was dusty and frequented by a yard dog.  The EEOC argues that the transfer was not a genuine attempt to resolve Schell's complaints of age discrimination because Duff knew that, even if the company offered her the transfer, she would refuse it because it was a demotion and in an undesirable location.  Finally, the EEOC notes that just weeks before Schell's termination, Duff threatened to fire her if things did not change, and also attempted to intimidate Schell by telling her that a former employee once sued MasTec, lost the case, and had to pay MasTec as a result.

Viewing the evidence in the light most favorable to the EEOC, the Court concludes that there is a genuine issue of material fact as to whether Schell's termination was retaliatory and not the result of her refusal to accept the transfer.  First, there is a genuine issue of material fact as to

whether Duff even offered Schell a transfer.  Schell testified that Duff did not officially offer her

the position, but briefly mentioned it, and did not offer any details regarding the new position,

such as the rate of pay.  Moreover, even if Schell was offered a transfer, the EEOC has raised a

factual dispute as to whether Duff made the offer knowing that Schell would reject it; i.e., that

the transfer was similar to a constructive discharge.  *See generally*, *Durley v. APAC, Inc.,* 236

F.3d 651, 658 (11th Cir. 2000) (requiring the plaintiff show to show that "working conditions

were so intolerable that a reasonable person in her position would have been compelled to

resign") (quotations omitted); *Akins v. Fulton County*, 420 F.3d 1293, 1301 (11th Cir. 2005)

(ruling that "a transfer to a less desirable position in terms of pay . . . is an adverse employment

action because it is equivalent to a demotion").  Whether the non-supervisory, clerical position

that Duff allegedly offered would have qualified as a demotion from her position as a General

Ledger Supervisor in the Accounting Department is an issue for the jury to decide.  Furthermore,

Duff's offer seems disingenuous considering the fact that Schell declined Boue's offer to transfer

just five days earlier.  Accordingly, the EEOC has put forth sufficient evidence to rebut

MasTec's preferred reason for terminating Schell's employment and to preclude the entry of

summary judgment.

### B.       The EEOC's Duty to Conciliate

MasTec also argues that this case is due to be dismissed because the EEOC failed to

satisfy its statutory duty to conciliate in good faith when it refused to explain the factual basis for

its Determination.  MasTec alleges that the EEOC "completely stonewalled" and refused to

discuss the basis of the Determination, despite MasTec's repeated requests both in writing and at

the conciliation conference.  Furthermore, as evidence of the EEOC's "utter disregard for its

obligations," MasTec points to the fact that Zurita never informed the company that he believed its requests were made in bad faith, as well as the fact that he believed an appropriate response to MasTec's requests would have been "'Go fly a kite with your technicalities.'"

Before initiating litigation, the EEOC must "attempt to eliminate the discriminatory practice . . .alleged, and to effect voluntary compliance with [the ADEA] through informal methods of conciliation, conference, and persuasion."  29 U.S.C. § 626 (b).  "To satisfy the statutory requirement of conciliation, the EEOC must (1) outline to the employer the reasonable cause for its belief that [the ADEA] has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir. 2003).  To determine whether the EEOC fulfilled this requirement, "'the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances.'" *Id.* (quoting *EEOC v. Klinger Elec. Corp.*, 636 F.2d 104, 107 (5th Cir. 1981)).

Here, the record does not support MasTec's position that the EEOC refused to provide a factual basis for its Determination.  To the contrary, the record shows that the EEOC explained its Determination no less than four times.   The EEOC first provided an explanation in its Letter of Determination, when it explained that Schell was not responsible for the problems in the Accounting Department, that other employees were responsible but were not disciplined, and that Schell was terminated after she complained.  Investigator LoChin again provided a factual explanation for the EEOC's Determination in at least three conversations with MasTec attorneys before and during the conciliation conference.  Although MasTec disputes this fact, the Court must view the evidence in the light most favorable to the EEOC and draw all reasonable

inferences in its favor.

Furthermore, this case is distinguishable from *Asplundh* and other cases in which the EEOC's failure to conciliate warranted dismissal. In *Asplundh*, 340 F.3d at 1259, the EEOC investigated the employee's complaint for three years before issuing its letter of determination finding cause to believe that discrimination had occurred. Then, "in a flurry of activity," the EEOC issued its determination, proposed nation-wide conciliation, and provided the employer twelve business days to respond. *Id.* at 1259-60. The EEOC did not identify any theory on which the employer could be liable for the alleged discrimination. *Id.* at 1260. When the employer requested a reasonable extension of time to respond, the EEOC immediately terminated conciliation and announced its intent to sue. *Id.* The district court dismissed the case, ruling that the EEOC acted in a "grossly arbitrary manner." *Id.* at 1259. The Eleventh Circuit agreed, ruling that the EEOC's conduct "'smacks more of coercion than of conciliation.'" *Id.* (quoting *EEOC v. Pet, Inc.*, 612 F.2d 1001, 1002 (5th Cir. 1980) (per curiam) (ruling that the EEOC's "all or nothing approach" to conciliation violated its statutory obligations)).

In this case, unlike in *Asplundh*, the EEOC explained to MasTec the reasonable basis for its belief that the ADEA had been violated no less than four times. The EEOC then offered MasTec an opportunity to reach an agreement and avoid litigation at the conciliation conference. Furthermore, the EEOC responded in a reasonable and flexible manner to MasTec's repeated requests for additional information. Contrary to MasTec's characterization of the record, Zurita testified that he did not have knowledge of LoChin's discussions with MasTec regarding its requests for additional information–not that the EEOC did not respond in any way to the requests. Zurita further testified that he does not recall whether the EEOC informed MasTec that

its requests were made in bad faith–not that the EEOC in fact failed to inform them.  The fact that MasTec was dissatisfied with the EEOC's explanation of its Determination is not a reason to find that the EEOC acted unreasonably.  Accordingly, in light of all of the circumstances, the Court finds that dismissal is not warranted because the EEOC was both responsive and reasonable in its attempt to conciliate with MasTec.

**IV.     Conclusion**

In conclusion, viewing the entirety of the record in the light most favorable to the EEOC, genuine issues of material fact remain as to whether MasTec terminated Schell's employment in retaliation for her complaints of age discrimination.  Furthermore, the EEOC has shown that it satisfied its statutory duty to conciliate in good faith.   Accordingly, the Court hereby **DENIES** MasTec's motion for summary judgment.

**DONE AND ORDERED** at Tampa, Florida, this 24th day of October, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

17